# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CHRISTOPHER A. NARRON**, | Case No. 6:14-cv-00923-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Acting Commissioner of Social Security | |
| Defendant. | |

Kathryn Tassinari and Mark A. Manning, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette, Suite 200, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, Acting United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Erin F. Highland, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Mr. Christopher A. Narron seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") finding him not disabled under the Social Security Act. For the following reasons, the Commissioner's decision is reversed and remanded for further proceedings consistent with this Opinion.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Mr. Narron protectively filed an application for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") on December 28, 2011, alleging disability beginning on August 1, 2009. AR 191-203. He alleges disability due to stents, hypertension,

depression with suicidal ideation, diabetes, right leg pain, and transitional ischemic attack.

AR 229. The Commissioner denied his application initially and upon reconsideration; thereafter,

he requested a hearing before an Administrative Law Judge ("ALJ"). AR 17, 139-42, 148-50,

157. An administrative hearing was held on November 1, 2013. After leaving the record open for

additional evidence, on November 21, 2013, the ALJ found Mr. Narron not disabled. AR 17, 39-

68, 14-32. After considering additional evidence submitted to it, the Appeals Council denied

Mr. Narron's request for review, making the ALJ's decision the final decision of the

Commissioner. AR 1-5. Mr. Narron now seeks judicial review of that decision.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An

impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ began his opinion by noting that Mr. Narron met the insured status requirements of the Social Security Act through December 31, 2014. AR 17. The ALJ further noted that Mr. Narron must establish disability on or before that date in order to be entitled to a period of disability and disability benefits. *Id*. The ALJ then applied the sequential process. AR 17-27. At step one, the ALJ found that Mr. Narron had not engaged in substantial gainful activity since the alleged onset date of August 1, 2009. AR 19. At step two, the ALJ found that Mr. Narron's hypertension, coronary artery disease, borderline intellectual functioning, and history of substance abuse were severe impairments. AR 20. At step three, the ALJ found that Mr. Narron did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. AR 20.

The ALJ then determined that Mr. Narron had the RFC to perform sedentary work, except that he was limited to no more than occasional stooping, crouching, crawling, kneeling, balancing, and climbing of stairs and ramps. AR 22. Further, the ALJ determined that Mr. Narron cannot climb ropes, ladders, or scaffolds and is limited to simple, repetitive, routine tasks requiring no more than occasional interaction with the general public. *Id*. In reaching this conclusion, the ALJ considered Mr. Narron's testimony, but found that it was not fully credible

due to his history of poor medical compliance and because the record contradicted his testimony

regarding his alcohol use. AR 23. The ALJ gave significant weight to the state reviewing

medical and psychological consultants. AR 25. In addition, the ALJ considered the testimony of

Mr. Narron's father, but did not give his testimony any weight to the extent that it contradicted

the RFC. *Id*.

The ALJ also denied Mr. Narron's request for a neuropsychological evaluation. The ALJ

found that Mr. Narron's activities of daily living, testimony regarding his functioning, and recent

work history supported the ALJ's RFC limitations. The ALJ also found that there was sufficient

evidence in the record to support the agency finding of borderline intellectual functioning.

Therefore, the ALJ determined there was no reason for further evaluation of Mr. Narron's

cognitive capabilities. AR 24.

At step four, the ALJ determined that Mr. Narron is unable to perform past relevant work.

AR 25. In reaching this conclusion, the ALJ relied on the testimony of a vocational expert

("VE"). *Id*. At step five, the ALJ considered Mr. Narron's age, education, work experience, and

RFC and, relying on the testimony of the VE, determined that there are jobs that exist in

significant numbers in the national economy that Mr. Narron can perform. AR 26. Based on the

finding that Mr. Narron is capable of making a successful adjustment to other work that exists in

significant numbers in the national economy, the ALJ concluded that Mr. Narron is not disabled.

AR 27.

## DISCUSSION

Mr. Narron seeks review of the ALJ's RFC determination and the ALJ's determination

that there are jobs that exist in significant numbers in the national economy that the claimant can

perform. Mr. Narron argues that the ALJ erred in making the RFC determination by: (1) failing

properly to develop the record by not ordering a consultative neuropsychological evaluation; and

(2) failing properly to include limitations in concentration, persistence, and pace. Mr. Narron further argues that the ALJ's step five determination is not supported by substantial evidence.

**A.  The ALJ's Duty to Develop the Record**

Mr. Narron asserts that the ALJ erred in failing to develop the record by obtaining a neuropsychological evaluation of Mr. Narron. A neuropsychological assessment may use a core intelligent quotient ("IQ") test as a component. At the request of the Court, the parties submitted supplemental briefing addressing the need for such testing with regard to whether Mr. Narron meets the requirements for Listing 12.05C.

Listing 12.05C requires a claimant to demonstrate "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22[1]; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). Here, the ALJ found that Mr. Narron did not meet the requirements of Listing 12.05C because (1) there is no valid IQ score in the record and (2) Mr. Narron does not have a physical or mental impairment imposing an additional and significant work-related limitation of function.[2] AR 21. The ALJ's finding at step two that Mr. Narron had severe impairments, however, satisfies Listing 12.05C's requirement of an impairment imposing an additional work-related limitation.

---

[1] This requirement arises out of the introductory paragraph of Listing 12.05 and is applicable to all of the subsections of Listing 12.05.

[2] The Commissioner argues that the record does not show deficits in adaptive functioning sufficient to meet the requirement of the introductory paragraph of Listing 12.05. In discussing the requirements of the introductory paragraph of Listing 12.05, however, including whether Mr. Narron had deficits in adaptive functioning initially manifested before age 22, the ALJ concluded "[t]he claimant's borderline intellectual functioning is presumed based on his reported history of special education courses." AR 21. Accordingly, the ALJ accepted that Mr. Narron had the requisite deficits in adaptive functioning. The ALJ then analyzed whether Mr. Narron met the specific requirements of Listing 12.05A-D.

*See McGrew v. Commissioner*, 2015 WL 1393291, at * (D. Or. Mar. 25, 2015) ("The ALJ's

finding at step two that Plaintiff had the severe impairment of an adjustment disorder with

anxiety and depressive symptoms satisfies the work-related limitation requirement of Listing

12.05C."); *Campbell v. Astrue*, 2011 WL 444783, at *18 (E.D. Cal. Feb. 8, 2011) ("Thus, a

finding of severe impairment at step two is a *per se* finding of 'impairment imposing additional

and significant work-related limitation of function' as employed in the second prong of

Listing 12.05C." (collecting cases)); *see also* Listing 12.00A ("For paragraph C, we will assess

the degree of functional limitation the additional impairment(s) imposes to determine if it

significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe'

impairment(s), as defined in §§ 404.1520(c) and 416.920(c)."). Accordingly, the ALJ's

conclusion that Mr. Narron did not have a physical or mental impairment imposing an additional

and significant work-related limitation was erroneous.

Because the ALJ erred in concluding that Mr. Narron did not have an impairment

imposing an additional work-related limitation, the only remaining basis on which the ALJ

determined that Mr. Narron did not meet the requirements of Listing 12.05C is the fact that there

was no valid IQ score in the record. Thus, an IQ score is potentially dispositive of whether

Mr. Narron meets the requirements of Listing 12.05C and is, therefore, disabled. *See Garcia v.

Comm'r of Soc. Sec.*, 768 F.3d 925, 931 (9th Cir. 2014) ("Because meeting the relevant listing

conclusively determines that a claimant is indeed disabled, 20 C.F.R. § 416.920(a)(4)(iii), the

claimant's IQ score can be the deciding factor in a determination of intellectual disability.").

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty

to investigate the facts and develop the arguments both for and against granting benefits." *Sims v.

Apfel*, 530 U.S. 103, 110-11 (2000). Moreover, the ALJ has a duty to "fully and fairly develop

the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d

1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). An

ALJ may need to order a consultative examination in order to have a fully and fairly developed

record in some cases, "including those in which 'additional evidence needed is not contained in

the records of [the claimant's] medical sources and those involving an 'ambiguity or

insufficiency in the evidence [that] must be resolved.'" *Reed v. Massanari*, 270 F.3d 838, 842

(9th Cir. 2001) (quoting 20 C.F.R. §§ 404.1519a(b)(1), (4), 416.919a(b)(1), (4)) (alterations in

original).

In March, 2012, Mr. Narron was examined by Dr. Charles P. Reagan. AR 659. As a

result of the examination, Dr. Reagan concluded that Mr. Narron was cognitively impaired and

functionally illiterate. AR 662.  Dr. Reagan further concluded that Mr. Narron had difficulty

following instructions. *Id*. The ALJ accepted all of these findings and gave Dr. Reagan's

conclusions great weight. AR 24. There is also evidence in the record that indicates Mr. Narron

attended special education classes while in high school, did not graduate from high school or

earn a GED, and had difficulty with reading, writing, and math. AR 54, 230, 299.

Because the only remaining basis for the ALJ's conclusion that Mr. Narron did not

satisfy the requirements of Listing 12.05C is the lack of an IQ score for Mr. Narron, rendering

the IQ score potentially dispositive, and because there is evidence in the record that suggests

Mr. Narron has mental impairments, the record is not fully and fairly developed without a valid

IQ score. *See Garcia*, 768 F.3d at 930-31 ("In a case, such as this one, that turns on whether a

claimant has an intellectual disability and in which IQ scores are relied upon for the purpose of

assessing that disability, there is no question that a 'fully and fairly develop[ed]' record will

include a complete set of IQ scores that report verbal, non-verbal, and full-scale abilities."

(citation omitted)). The ALJ's failure to order a psychological examination to determine

Mr. Narron's IQ was prejudicial error. Upon remand, the ALJ shall obtain a complete set of IQ

scores.

## B.  Limitations in Concentration

Mr. Narron also argues that the ALJ erred by failing to include appropriate limitations in

the RFC addressing Mr. Narron's limitations in concentration. Mr. Narron argues that this was

error because (1) the ALJ concluded in the step three analysis that Mr. Narron has "moderate

difficulties" in concentration, and (2) because Dr. Reagan found that Mr. Narron had difficulty

following instructions and that they needed to be repeated frequently.

When an ALJ makes a finding in step three of moderate limitations in concentration,

persistence, or pace, those limitations must be expressly reflected in the RFC assessment.

*Saucedo v. Colvin*, 2014 WL 4631225, at *17-18 (D. Or. Sept. 15, 2014); *see also Lubin v.*

*Comm'r Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) ("The ALJ must include all

restrictions in the [RFC] determination . . . including moderate limitations in concentration,

persistence, or pace."). "[A]n ALJ's assessment of a claimant adequately captures restrictions

related to concentration, persistence, or pace where the assessment is consistent with restrictions

identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th

Cir. 2008).

Because the ALJ found in step three that Mr. Narron has moderate difficulties in

concentration, persistence, or pace, those limitations must be reflected in the RFC and consistent

with the medical evidence. "[S]o long as the ALJ's decision is supported by medical evidence, a

limitation to simple, repetitive work can account for moderate difficulties in concentration,

persistence or pace." *Bickford v. Astrue*, 2010 WL 4220531, at *11 (D. Or. Oct. 19, 2010) (citing

*Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). In *Stubbs-Danielson*, the

PAGE 10 – OPINION AND ORDER

Ninth Circuit found no error in the ALJ's RFC finding that limited plaintiff to "simple, routine, repetitive" tasks, notwithstanding that the plaintiff suffered deficiencies in pace, because there was medical evidence in the record supporting that the plaintiff could perform such tasks. *Id.* at 1173-74.

Dr. Reagan found that Mr. Narron has "concentration issues." AR 662. Those issues include difficulty following instructions, which need to be repeated frequently. *Id.* Accordingly, the ALJ's limitation in the RFC to simple, repetitive, routine tasks is consistent with the restrictions identified by Dr. Reagan. Thus, there is no error here.

**C.  Step Five Determination**

Lastly, Mr. Narron argues that the ALJ's step five determination is flawed because the hypothetical posed to the VE failed to include a limitation in concentration, persistence, or pace. The hypothetical posed to the VE was a recitation of the RFC assessment. Because the RFC assessment adequately contained limitations addressing Mr. Narron's limitations in concentration, the hypothetical did, as well.

## CONCLUSION

The Commissioner's decision that Mr. Narron is not disabled is REVERSED and REMANDED for further proceedings consistent with this Opinion.

**IT IS SO ORDERED**.

DATED this 5th day of August, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge